## Hall v. Commonwealth.

(Decided December 18, 1931.)

A. J. MAY and EDWARD ALLEN for appellant.

J. W. CAMMACK, Attorney General, and BASIL P. COOPER, Assistant Attorney General, for appellee.

Opinion of the Court by Hobson, Commissioner— Reversing.

George Hall was indicted in the Floyd circuit court for the murder of Montgomery Johnson. On the trial of the case, he was found guilty of manslaughter, and his punishment fixed at fifteen years' imprisonment. He appeals.

George Hall, who is a young man about thirty years old, with a wife and four children, lived in the town of Martin in Floyd county. He sold his business, and on the day in question moved with his family to the home of his mother, Rhoda Hall, who lived a short distance from Weeksbury. He got there with his wife and children late in the evening. They got out, and he went up to Weeksbury with the car to make some arrangements about it. While he was gone this occurred: Montgomery Johnson was walking down the road, not far from Rhoda Hall's house, with Dora Johnson, when they met a friend named Hays. Montgomery Johnson said "Wait a minute Hays I will go with you." He asked where he could find some whisky and Hays told him that he did not know where there was a drop. He turned and went back with Hays. When they reached Rhoda Hall's house, he left Hays, saying he would go in there and raise hell. Rhoda Hall had a paralyzed son, Ed Hall, who was lying on a bed near the window. When he saw Johnson coming in, he pulled up a chair to the window and invited Johnson to take a seat. Johnson declined to take the chair, and came on in the room. The paralytic was in the habit of taking whisky at times as a stimulant, and Johnson had been to see him before, and it seems knew this. When he got in, he commenced searching the paralytic's bed for whisky. Ed Hall told him that he had no whisky, but he was rough with him, and continued his search. While this was going on, George Hall came back from Weeksbury and came in the room. Johnson was sitting on the bed by the paralytic, and George Hall invited him take a chair so as to not disturb his brother. He took the chair, and at his request Ed Hall, who had a banjo, began picking some tunes on it. Johnson was patting to the tunes, and then got up and danced, and requested George Hall to dance with him. George said he could not dance, but finally did get up and go through some steps. They then all sat down and were talking. Mrs. Hall came into the room to light a lamp. Johnson said to her, "Mrs.

Hall, you get out of this room. You don't know and I don't care what is going to happen here.'' She left the room and went back to the kitchen. Silas Collins, a neighbor, came in and was talking to Ed Hall about renting a house from him. Johnson said to Collins, ''If you have anything to say, say it and quit chewing the rag and get to hell out of here.'' He proposed to George Hall then to go with him to Wheelwright. George Hall said, ''I can't go.'' Johnson said, ''By God let's go to Wheelwright, Bad John Hall there is going to take care of my trouble.'' George still declined to go, and Johnson jumped up and grabbed George Hall by the left arm and said, ''Come on you God-damn red-headed son of a bitch I am going to kill you,'' and threw his hand under his coat as he said it. George Hall had a pistol in his left pocket, which he had brought with him in the automobile when he moved and had put in his pocket to take in the house, but had not taken it out. He drew his pistol, and in the scuffle shot Johnson, who died a few hours later. Johnson had no pistol or other weapon on his person. There was no powder burn on his shirt.

The above are the facts as shown by the witnesses introduced by the commonwealth no less than by the witnesses introduced by the defendant, although there are as usual in such cases a few minor differences in expression.

On the cross-examination of George Hall, the commonwealth's attorney asked him, over the objection and exception of the defendant, and he answered in substance as follows: ''I never had any trouble with Montgomery. There was no coolness between the families that I know of. I spoke to the boys every time I passed them. One of Johnson's brothers was burned up in an old house my mother owned. His name was L. A. Johnson. They did not accuse me, so far as I know, of anything to do with it. I never heard of that at all. They had an investigation over that. We were summoned to the inquest.''

Then followed these questions and answers:

''Q. Didn't they come to you and have your finger prints made? A. I never did make any finger prints.

''Q. You knew of a coldness existing between your family and the Johnson family over that matter? A. Nothing between them and me.

"Q. You never heard anything about it? A. No, sir, not that I know of."

Then this followed:

"At this point, the defendant moves the court to set aside the swearing of the jury and continue the case, because of asking the defendant, concerning the shooting of the deceased's brother, and the burning of the Wash Hall house and the death of Jefferson Johnson's son who is claimed to have been burned in said house. Which motion is overruled, to which the defendant excepts.

"By the Court: The jury will consider the evidence brought out on cross examination of the defendant, relative to the burning of the Wash Hall house, and the death of the brother of Montgomery Johnson therein, only for the purpose of throwing light, bearing upon the question of malice towards the Johnsons, especially the deceased, Montgomery Johnson in this case, you can't consider this evidence at all only as facts determining whether or not the defendant is guilty as charged in this indictment, substantive facts that constitute that offense, merely to show the feeling if it does show feelings of malice between them."

Defendant excepts to the admonition of the court.

The court properly overruled the objection to the questions; for the commonwealth might contradict the defendant by showing that he had not stated truly on this subject, but there was not other proof in the case on the subject. No proof was offered to show that the defendant had not answered the questions truly. In fact, when he came in that evening, Johnson had to tell him who he was; he had not seen him for some years, and did not know him by sight. The facts being as stated by the witness, there was nothing in these facts to show feeling between them or malice on the part of the accused. The court erred, therefore, in telling the jury that they might infer malice or ill feeling from this testimony.

On the final argument of the case, the commonwealth's attorney, over the objection and exception of the defendant, said this:

"I can't say there is no malice in this case. I say there is malice in this case; something has hap-

pened back in the dark distant past, a house burned; another one of the stalwart sons of Jefferson Johnson was killed in that house, and the house burned. (By the court; Go on I will take care of it.)

"This man admits the officers asking him for his finger prints on the charge of this Johnson killing.

"I have the right to argue from the time of that fire, it points to the murder you have here, in this uncalled for way, because it didn't happen the way they said it did."

There was no evidence that the officers had asked George Hall for his fingerprints on the charge of killing L. S. Johnson. In fact, there was no proof that there had been any inquest on this charge, or that the defendant was ever charged by anybody with having anything to do with this. The commonwealth's attorney, in his closing argument, should not go outside of the evidence in the case. This was evidently prejudicial to the defendant, in view of the charge of the court, above referred to, and emphasized that error. The court concludes on the whole facts that the above was prejudicial to the substantial rights of the defendant on the trial, and that a new trial should be granted.

Appellant complains of the instruction on self-defense; that it submits to the jury the question whether they believed from the evidence that the shooting was necessary in his self-defense, rather than the question whether he so believed and had reasonable grounds to so believe under the facts as they were presented to him. The court does not see that there was any substantial error in the instruction, but, that there may be no misunderstanding on another trial the court will give the instruction in the usual form and in these words:

"Although the jury believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed deceased, yet if at the time the defendant so shot and killed deceased, he had reasonable grounds to believe, and in good faith did believe, that the deceased was then and there about to inflict upon him, death or some great bodily harm, and that to shoot deceased was necessary, or seemed to him, in the exercise of a reasonable judgment, to be necessary, in order to protect himself from said danger,

real, or to the defendant apparant, you should find the defendant not guilty, on the ground of self-defense and apparent necessity."

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.